FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 04 2011

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

KYLE CROSS,

                 Petitioner,

        -against-

ADA PEREZ, WARDEN OF DOWNSTATE
CORRECTIONAL FACILITY,

                 Defendant.

------------------------------------------------------------ X

**MEMORANDUM
DECISION AND ORDER**

11 Civ. 1186 (BMC)

**COGAN**, District Judge.

       Petitioner *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) in connection with his guilty plea to a charge of armed robbery. Petitioner claims that he accepted a plea offer based on his attorney's incorrect advice as to whether a prior New Jersey conviction qualified him as a second violent felony offender under New York law. This case raises issues as to whether a waiver of appellate and collateral-challenge rights in connection with a guilty plea is worth the paper it is written on; the differences between federal and New York law in applying that waiver; and the extent to which an objectively reasonable defense lawyer should understand these issues when advising a client of how foreign convictions will affect his sentence. I hold that the state court unreasonably applied Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), and therefore grant the writ of habeas corpus.

I

       The facts set forth below are taken from the record of proceedings in the state courts. In addition, the Court has accepted as true petitioner's factual allegations concerning his off-the-

record discussions with his defense counsel at the time of his guilty plea and sentence, as they are detailed and credible, and respondent has not sought to contradict them.

Petitioner, facing a charge of first-degree robbery, decided to conditionally accept a plea agreement that the prosecutor offered on the eve of trial. The discussions over whether petitioner would accept it, some of which occurred off the record, initially focused on whether he would be sentenced as a "persistent violent felony offender" under § 70.08(1)(a) of New York's Penal Law, which carries a mandatory minimum sentence of twenty years' custody. This enhanced sentencing status depended upon how many, if any, of three prior New Jersey convictions would "count" as predicate violent felony offenses under the Penal Law. When that issue was identified during on-the-record plea negotiations, the prosecutor agreed to allow a plea to a lesser charge that would carry a term of twelve years to life. The trial court was scrupulous in laying out petitioner's options without pressuring him to accept the twelve-year plea.

At that point, the transcript reflects that the parties had an off-the-record discussion. Petitioner asserts, and it is consistent with what follows in the transcript, that he had done his own legal and factual research, obtaining the indictments underlying his New Jersey convictions and comparing these convictions to their New York statutory counterparts. Petitioner presented supporting authorities to his attorney and communicated his view that none of his three prior New Jersey convictions were sufficiently analogous to their New York statutory counterparts to serve as predicate violent felony offenses. According to petitioner, his attorney, the prosecutor, and the trial court agreed with him that two of his prior convictions corresponded to New York misdemeanors and petitioner therefore could not be sentenced as a persistent violent felony offender (a status that could only be imposed if petitioner had two or more prior violent felonies). However, the prosecutor, defense attorney, and judge each held the view that

2

petitioner's third prior conviction, for aggravated assault against a police officer under N.J. Stat. § 2C:12-1(b)(5)(a)[1] (the "New Jersey assault statute"), qualified as a predicate violent felony under N.Y. Pen. L. § 70.04(1)(b)(i), which provides for enhanced sentencing of a "second violent felony offender" (as opposed to a "persistent violent felony offender"). Under the attorneys' and the court's view, the New Jersey assault conviction qualified as a predicate felony because it is analogous to N.Y. Pen. L. § 120.11, "Aggravated Assault on a Police Officer or Peace Officer" (the "New York assault statute").[2] Petitioner disagreed with his attorney, the prosecutor, and the trial court, but deferred to their view of the issue. Based on the determination that petitioner was a "second violent felony offender," rather than a "persistent violent felony offender," the prosecutor lowered his plea offer to ten years, which petitioner accepted. This sentence reflected the minimum sentence for a second violent felony offender convicted of first-degree robbery in New York.

The trial court then went back on the record and stated that petitioner had agreed to plead guilty as a second violent felony offender and accept a ten-year sentence, summarizing their off-the-record discussion as follows:

> THE COURT: On the record. Let me start. Everybody sit for a second. We have been discussing this case at length off the record to see, number one, whether or not defendant is truly a mandatory violent persistent felony offender, at least facing adjudication as such, upon a conviction on the matter before me today.

---

[1] The statute provides that it shall be an aggravated assault in the third degree when a person assaults "any law enforcement officer in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status of a law enforcement officer . . . if the victim suffers bodily injury." Under N.J. Stat. § 2C:11-1(a), "'[b]odily injury' means physical pain, illness or any impairment of physical condition."

[2] "A person is guilty of aggravated assault upon a police officer or a peace officer when, with the intent to cause serious physical injury to a person whom he knows or reasonably should know to be a police officer or peace officer engaged in the course of performing his official duties, he causes such injury by means of a deadly weapon or dangerous instrument." Under N.Y. Pen. L. § 10.00(10), "'[s]erious physical injury' means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

It would appear that there is a very good reason to believe that he is not. Upon defendant's own research and the paperwork which we are going to be photocopying and [the prosecutor] will take back to his office so that at the time of sentencing, defendant can be dealt with as a second violent felony offender but not a mandatory persistent violent felony offender. That sounds okay right now.

[DEFENSE COUNSEL]: Yes.

[THE PROSECUTOR]: Yes, Judge.

THE COURT: Right. And People, from your analysis of what you're being shown and going over the statute and our penal law sections as opposed to the New Jersey statute, it would appear that defendant's research seems accurate, actually.

[THE PROSECUTOR]: It appears that the certified documents in comparison with the New Jersey statutes of aggravated assault and other related New Jersey statutes that appears to be accurate, Judge.

THE COURT: Right, good. And then based on that, I understand now that you have approval at this time, therefore [we are] going to do this right now which is what I'm ready to do, to offer defendant as a second violent felony offender which – he will be adjudicated formally as such prior to sentence, but to offer him a sentence, a determinate sentence of ten years flat.

[THE PROSECUTOR]: Correct.

The trial court then accepted petitioner's guilty plea after putting him through a very thorough allocution as to the fact of his guilt and the rights that he was surrendering by pleading guilty. The trial court specifically advised petitioner that he would be sentenced as a second violent felony offender and receive ten years:

THE COURT: . . . The promised sentence of ten years is based on the fact that it is this Court's understanding that prior to sentence you are admitting that you have what constitutes a previous violent felony conviction, which based on that, will therefore expose you to sentencing as a second violent felony offender.

We are going to arraign you on all the appropriate paperwork and adjudicate you as such prior to sentence on the next Court date. Do you understand, sir?

THE DEFENDANT: Yes.

THE COURT: But without – Putting the formalities aside, is it your intention and your understanding that you're going to be prepared to admit such prior to sentence?

THE DEFENDANT: Yes.

4

THE COURT: Okay. And indeed this whole plea is predicated on that. Otherwise, you know --

THE DEFENDANT: Understood.

[DEFENSE COUNSEL]: So the record is complete, the other side of the coin is that on the date of sentence, the understanding is that [the prosecutor] will not come in here and say I have done more research and that one conviction in Jersey that I agreed isn't or I did agree was a non-violent now I'm changing my mind.

[THE PROSECUTOR]: That's [my] understanding.

THE COURT: You don't intend to do that?

[THE PROSECUTOR]: No.

The trial court also went over the appeal waiver that was part of the plea agreement. In reference to the written appeal waiver that petitioner signed, the trial court advised him:

THE COURT: . . . All right, Mr. Cross, let's discuss this issue of waiver of right to appeal.

You, sir, as well as every defendant would have, without signing this document, you would have every right to challenge this plea and sentence at a later time.

So if couple of days from now, a hundred days from now or a thousand days from now, just to give you some examples, you decide that you want to challenge this plea and sentence before me or another Judge in this Court or in a higher Court or even in Federal Court, you would have every right to make such challenges. You understand?

THE DEFENDANT: Yes.

THE COURT: And or file such appeals. You would have that right. But by agreeing to this waiver document, you're saying, Judge, I understand that I would have had those rights but I am knowingly, intelligently and voluntarily giving up my right to make such challenges and/or challenge such appeals, do you understand?

THE DEFENDANT: Yes.

THE COURT: And why would you do that? Well, you certainly can recognize from what just took place today before we even got to the point of putting on a negotiated disposition on the record, that it's the D.A.'s position that they are offering you a plea bargain, they want this to be final. Took a lot of work to work out this disposition. They don't want you to then turn around and try to challenge or undo this plea and sentence at a later time. You understand?

THE DEFENDANT: Yes.

THE COURT: And you're saying, sir, you're saying, Judge, yes, I understand this and I'm willing to give up those legal and constitutional rights that I otherwise

5

would have as part of what we call the consideration, part of what you are giving up as part of the plea bargain in this case, okay.

That is a primary reason why the D.A. is offering you this plea bargain with a reduced sentence, okay. And you are saying, Judge, I understand this and I'm happy to have this negotiated plea, I understand I am giving up my right to challenge it. You understand?

THE DEFENDANT: Yes.

The written waiver, signed by petitioner, stated, in part, as follows:

> **1. Waiver of Right to Appeal:** I acknowledge that I have been advised of, and waive, my right to appeal from the judgment of conviction or sentence. . . .
>
> This waiver applies to all issues that may validly be waived. This includes but is not limited to any issue regarding the effectiveness of counsel prior to my plea in this case and any issue that may arise with respect to the imposition of sentence. I also waive any issue that may arise with regard to my adjudication as a second felony offender, second violent felony offender . . . or persistent violent felony offender.
>
> **2. Waiver of Right to File Post-Trial Motions and Applications:** I have been advised of, and waive, my right to file motions to vacate my conviction and to set aside my sentence under C.P.L. Article 440, my right to file habeas corpus petitions in state and federal court, and any right I may have to file any other motion or application attacking my conviction in state or federal court.

Approximately one month later, the trial court sentenced petitioner as a second violent felony offender to ten years as per the agreement. Petitioner expressly waived his right to contest the predicate felony conviction. Consistent with the appeal waiver, petitioner did not take a direct appeal from his conviction and sentence.

However, just over two months after his sentence, petitioner filed a motion under N.Y. C.P.L. § 440.10 to set it aside or reduce it. He argued, *inter alia*, that his counsel was ineffective in advising him that the New Jersey aggravated assault conviction made him a second violent felony offender. Petitioner asserted that, had his counsel properly argued to the trial court that the New Jersey conviction could not serve as a predicate offense, he would not have been deemed a second violent felony offender. He further asserted that this would have caused him to

6

receive, and accept, a plea agreement offering eight years instead of ten years, the minimum for a first time violent offender with a prior felony conviction.[3] Petitioner sought a sentence reduction to bring him to that level. The § 440 court, by the same judge who sentenced petitioner, found that petitioner had "executed this waiver in a knowing, voluntary, and intelligent fashion, particularly giving up the right to attack what he is challenging herein. The defendant is no novice to the criminal justice system with many prior convictions." Additionally, the § 440 court rejected the ineffective assistance claim on the merits, noting that petitioner had a "full" discussion of his New Jersey convictions with his attorney prior to entering the plea, and had reviewed his own research with his lawyer prior to accepting the prosecutor's offer. The Appellate Division denied leave to appeal.

## II

Respondent first contends that, even without regard to the decision of the § 440 court, petitioner's execution of a waiver agreement as to his federal habeas corpus rights (combined with his allocution acknowledging that waiver) bars federal habeas corpus review. This contention subsumes two issues: (a) will a federal court recognize a waiver of federal habeas corpus rights, entered into in state court, as an independent ground under federal law upon which to deny review; and (b) will a claim of ineffective assistance of counsel as to entry into a plea agreement under these circumstances vitiate the waiver?

---

[3] Petitioner appears to be referring to N.Y. Pen. L. § 70.06(6)(a), which provides an eight-year minimum sentence for a first-time violent felon with a prior, non-violent felony conviction. Respondent does not refute petitioner's assertion that eight years would have been the applicable minimum sentence, had petitioner not been deemed a second violent felony offender.

## A.

There is surprisingly little authority as to the first issue, and none from the Second Circuit. It could be argued that, since § 2254 does not refer to the possibility of waiver, and since the federal court's charge under the statute is to review merits-based state court decisions or deny review based on recognized state procedural grounds, there is no vehicle for enforcing a state court waiver of federal habeas corpus relief in federal court. However, I think the better view is to analogize such waivers to those arising from federal convictions in which review is sought under § 2255, and to recognize § 2254 waivers under the same circumstances.

This is the conclusion Judge Bianco recently reached in <u>Rodriguez v. Conway</u>, No. 06-6358, 2010 WL 92911 (E.D.N.Y. Jan 6, 2010). He held that such a waiver would be given effect in federal court if it meets the recognized federal standard of being knowing and voluntary. Because the written waiver in that case explicitly covered federal habeas corpus relief, Judge Bianco rejected the petitioner's contention that he thought he was only surrendering his state court appellate rights. He rejected this contention even though – unlike here – the state court's oral explanation of the waiver did not expressly refer to federal rights. Judge Bianco distinguished the Eleventh Circuit's decision in <u>Allen v. Thomas</u>, 161 F.3d 667 (11th Cir. 1998), which refused to find a waiver of the right to seek federal habeas corpus relief, because the waiver at issue there did not expressly refer to federal habeas corpus proceedings. <u>Compare</u> <u>Brown v. Thompson</u>, No. 06-126, 2007 WL 2594054, at *1 (M.D. Ga. Sept. 5, 2007) (recognizing waiver in § 2254(d) case where the waiver expressly referred to federal habeas corpus rights).

It is well established that a federal defendant may waive both his right to direct appeal and his § 2255 rights. <u>See</u> <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 508 (2d Cir. 2001).

8

The waiver of federal habeas review by a state defendant under § 2254(d) is one step removed from these waivers, as it provides an even narrower standard of review than direct appeal or § 2255 review. In that sense, at least, the right being surrendered is less fundamental than the right to *de novo* review in the context of a direct appeal or a § 2255 petition. And although § 2254 does not expressly refer to a waiver of the rights that it grants, neither does § 2255, and yet the federal courts regularly recognize § 2255 waivers. See id. Most federal rights are subject to waiver if the waiver is knowingly and intelligently given, see Johnson v. Zerbst, 304 U.S. 458, 463-64, 58 S.Ct. 1019 (1938), and the right to federal habeas corpus review of a state court conviction should be treated the same way.

Putting aside for the moment petitioner's claim of ineffective assistance of counsel, which is discussed below, there can be no question on this record that he knowingly and voluntarily waived his right to collaterally attack his sentence and specifically his right to federal habeas corpus review. See generally Parke v. Raley, 506 U.S. 20, 28-29, 113 S.Ct. 517 (1992) ("The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.") (internal quotation marks omitted). He was an active participant in the plea discussions and had material input in structuring the plea agreement based upon his own legal research and analysis. He was advised of and acknowledged the waiver twice: when the state court explained it to him, and again in a detailed but clear, stand-alone written document that constituted the waiver. He understood completely that one, and only one, of his three New Jersey convictions would "count" in determining his sentencing status, and he understood that this was part of the *quid pro quo* for his plea. He does not claim that he had a failure of understanding with regard to the waiver. Indeed,

9

petitioner himself describes his decision as knowing and voluntary. Writing in the third person, petitioner stated:

> The petitioner was obviously aware of the evidence against him, and the fact that he emphasized his willingness to plea early in the proceedings, but more importantly, being cognizant of the people, counsel and the court being convinced that the New Jersey conviction was a [qualifying] violent felony, the petitioner knowingly, voluntarily and intelligently accepted the plea of ten years, the very minimum for a second violent offender, and was sentenced accordingly.

## B.

Having determined that petitioner knowingly and voluntarily executed a waiver of his federal habeas rights, the next question is whether the waiver bars the instant petition.

The petitioner in <u>Garcia-Santos</u>, in his § 2255 application, claimed that his attorney was ineffective for "fail[ing] to inform him of the adverse consequences he faced if he signed the plea agreement." 273 F.3d at 508. The Second Circuit did not reach the merits of the claim, finding, instead, that the appeal waiver[4] in the plea agreement expressly barred habeas corpus relief. The Circuit affirmed the district court's finding that the waiver itself was voluntarily and knowingly given based on the circumstantial evidence surrounding the guilty plea:

> The conclusion was supported by the following facts: (1) petitioner signed the plea agreement, (2) he stated to the magistrate judge that he had read and understood the plea agreement, (3) Garcia–Santos did not attempt to appeal his sentence, even though he had been told by the sentencing judge that he had the right to appeal, (4) he did not claim, in his § 2255 motion, that he had not understood the waiver contained in his plea agreement, and (5) even in his petition for reconsideration, he did not assert explicitly or under oath that at the time of his plea he did not understand that he was giving up his right to appeal and petition under § 2255.

<u>Id.</u> Significantly, the Circuit reached this conclusion even though the district court had not mentioned or discussed appeal waiver when accepting Garcia-Santos's guilty plea.

---

[4] I use the term "appeal waiver" as a shorthand reference that includes a waiver of both direct appeal and collateral proceedings, except where specifically noted otherwise.

Garcia-Santos could be read as allowing a petitioner to use an ineffective assistance claim to attack a plea agreement only if the ineffectiveness claim homes in on the waiver itself, rather than the advice given regarding whether to accept the plea agreement. There are reasons, however, not to read Garcia-Santos so broadly. First, in holding that an appeal waiver could preclude a § 2255 petition, the Court cited with approval the Tenth Circuit's decision in United States v. Cockerham, 237 F.3d 1179 (10th Cir. 2001). There, the rather vague claim on habeas review was that the petitioner's counsel had mistakenly counseled him to take the offered plea when the Government allegedly could not have offered sufficient evidence to sustain his conviction at trial. Although the Tenth Circuit held that rights under § 2255 could be waived, its ultimate conclusion was that

> a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea *or* the waiver. Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable.

Cockerham, 237 F.3d at 1187 (emphasis added).[5]

Garcia-Santos also cited with approval other circuits' decisions that are in line with Cockerham. See DeRoo v. United States, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary."); Jones v. United States, 167 F.3d 1142 (7th Cir. 1999) (holding that waiver does not generally preclude § 2255 relief in the face of claims of ineffective assistance in

---

[5] In the Tenth Circuit, these kinds of claims have become known as "Cockerham claims." See United States v. Akers, 377 F. App'x 834, 836 (10th Cir. 2010).

11

negotiating the plea agreement, but finding that allegations of ineffective assistance too conclusory to overcome waiver).

There is tension between Garcia-Santos and some of the cases, like Cockerham, that it cites with approval. Where Garcia-Santos seemed to distinguish claims attacking the waiver specifically from claims attacking the plea agreement generally, Cockerham suggested that a petitioner's decision to waive his appellate or collateral-attack rights, in the context of a plea agreement, is not severable from his decision to accept the plea offer.

However, the Second Circuit subsequently decided three cases in which the Court's reasoning was more in line with Cockerham than with Garcia-Santos. In United States v. Hernandez, 242 F.3d 110 (2d Cir. 2001), on direct appeal of a denial to vacate a guilty plea, the defendant claimed his attorney misled him as to the consequences of his plea. Specifically, the defendant claimed that he did not speak English and had only five minutes to review the agreement through an interpreter before entering the courtroom, and that his attorney told him he would only be sentenced to two years in prison and did not explain that he was waiving his appellate rights. The Second Circuit declined to enforce the appeal waiver, noting, albeit in dictum, that

> a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel. The rationale is that the very product of the alleged ineffectiveness cannot fairly be used to bar a claim of ineffective assistance of counsel.
>
> Of course, the refusal to apply such a waiver provision in these circumstances only allows appellate review of the constitutionality of the process by which the plea agreement was consummated.

Hernandez, 242 F.3d at 114-15 (citations and quotations omitted). Nevertheless, the Court affirmed the conviction because the defendant's statements during his allocution were directly contrary to the allegations in his motion to vacate his plea.

In Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192 (2d Cir. 2002), the Court held that a claim that counsel was ineffective for failing to object to the inadequacy of the trial court's compliance with Fed. R. Civ. P. 11 during the plea allocution could be raised in a § 2255 petition, notwithstanding a waiver in the plea agreement of the right to collaterally challenge the sentence. The Court explained that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick, 308 F.3d at 195.

The question thus becomes the breadth of the definition of "process" by which either the waiver or the agreement itself was procured. The Second Circuit's most recent decision on appeal waivers in collateral review cases, Parisi v. United States, 529 F.3d 134 (2d Cir. 2008), defines it expansively. There, the petitioner claimed that his guilty plea should be vacated and the indictment dismissed because his counsel was ineffective for failing to seek dismissal under the Speedy Trial Act. See Zedner v. United States, 547 U.S. 489, 126 S.Ct. 1976 (2006). The Court explained that the petitioner's appeal waiver, which was part of his plea agreement, barred his claim. But the Court cited Hernandez for the proposition that a challenge to the "constitutionality of the *process* by which he waived his right to appeal" would survive the waiver. Parisi, 529 F.3d at 138 (emphasis in original).

The Parisi Court then discussed the scope of the word "process" in the context of a waiver procured through a plea agreement. The Court explained that the petitioner was wrong to assume that "[e]verything that occurs prior to a guilty plea" is part of the "process" simply

13

because it ultimately affects the petitioner's bargaining position during plea negotiations. Id. The petitioner had therefore waived his right to claim that his counsel was ineffective for failing to move for dismissal on speedy trial grounds prior to the plea agreement process. Instead, the Court held that Parisi's Sixth-Amendment claim could survive his waiver if there was a connection between "the alleged ineffectiveness of Parisi's counsel" and "the voluntary nature of his plea." In finding that Parisi had established this connection, the Court drew a very fine distinction: it inferred, based solely on Parisi's *pro se* status, that he was additionally arguing that "his attorney was ineffective in advising him to accept the plea agreement rather than advising him to move to dismiss the indictment with prejudice based on alleged Speedy Trial Act violations." 529 F.3d at 139. Because this claim challenged the lawyer's advice during the plea agreement "process," the Court found that the ineffectiveness was sufficiently connected to the voluntariness of Parisi's plea and the claim therefore survived Parisi's waiver.

Parisi's broad "connectivity" standard, in my view, allows virtually all ineffective assistance claims to survive waivers procured through plea agreements. It is hard to imagine a material and erroneous act by counsel, committed prior to the guilty plea, which would not infect the decision as to whether or not to enter into the plea agreement. If a Court can simply infer, as the Parisi Court did, that a petitioner's ineffective assistance claims challenge his counsel's ultimate advice as to whether or not to take a plea, the waiver will drop out of almost any case in which an ineffective assistance claim is raised, and the habeas court may as well proceed directly to the Strickland claim with little more than a passing glance at the waiver.

Applying Parisi, as I read it, I find that petitioner's waiver may not serve as a federal procedural bar to his claims of ineffective assistance of counsel. There is no need to infer "connectivity" from petitioner's allegations – he expressly alleges that, had his attorney done his

14

job and discovered that the final New Jersey conviction could not serve as a predicate conviction, petitioner would have been offered, and would have accepted, a more lenient plea agreement. Indeed, the attorney error alleged here is much closer both temporally and causally to the issue of whether the plea was voluntary because, unlike in Parisi, the erroneous legal analysis and advice was itself the driving force behind the structuring of the plea agreement. It is manifest, from the transcript of petitioner's plea allocation, that his decision to plead guilty (and therefore, his decision to waive his habeas rights) was directly premised on his counsel's faulty advice regarding his New Jersey assault conviction.

Virtually all of the Second Circuit cases reject a waiver where the defendant attacks the "process." There is no more fundamental aspect of the plea agreement process than effective advice from counsel with regard to how the sentence will be computed under the proposed plea. See Boria v. Keane, 99 F.3d 492 (2d Cir. 1996). Petitioner's waiver, standing alone, therefore does not preclude my review of his Sixth Amendment claim.

### III

According to respondent, even if petitioner's waiver is ineffective to bar federal habeas relief, the § 440 court's decision recognizing the waiver is an independent and adequate state law ground for its decision which precludes federal review of petitioner's ineffective assistance claim. For reasons similar to those described above for rejecting the concept of a federal procedural bar in this case, I reject the adequacy of the § 440 court's state procedural bar.

A petitioner's federal claims may be procedurally barred from habeas corpus review if the state court invoked "independent and adequate" state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 729-33, 111 S.Ct. 2546 (1991). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the

case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 261-62 & 263, 109 S.Ct. 1038 (1989) (internal quotation marks omitted). A procedural rule is adequate if it is "firmly established and regularly followed by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). "[P]rinciples of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." Id. at 77 (internal quotation marks omitted).

The decision of the § 440 court in the instant case satisfies the requirement of independence, as the appeal waiver was expressly relied upon as dispositive, regardless of the merits of petitioner's claim. See Jimenez v. Walker, 458 F.3d 130 (2d Cir. 2006) (where state court specifically refers to a procedural bar, alternative holding on the merits does not eliminate federal court's obligation on habeas review to defer to procedural bar). However, the adequacy of the procedural bar presents a different question.

Respondent's attempt to defend the procedural bar invoked here is at least simplistic and possibly misleading. To show regular application of appeal waivers, respondent has cited to New York decisions that stand for the unremarkable proposition that appeal waivers are upheld under New York law. See, e.g., People v. Kemp, 94 N.Y.2d 831, 703 N.Y.S.2d 59 (1999); People v. Muniz, 91 N.Y.2d 570, 673 N.Y.S.2d 358 (1998) (written waiver of appeal enforced against double-jeopardy claim). However, as he did before the § 440 court, respondent has neglected to cite cases dealing with the effect of appeal waivers on claims of ineffective assistance of counsel. Those cases tell a different story. It is clear, contrary to respondent's assertion that the § 440 court's invocation of the waiver was "consistent with a well-established practice in New York of holding criminal defendants to their agreements when they waive

postconviction review as part of a negotiated plea bargain," that state courts will hear ineffective assistance of counsel claims notwithstanding an appeal waiver under certain conditions. See 36A Carmody-Wait 2d § 207:14 (database updated June 2011) ("[A] defendant's contentions that his or her waiver of the right to appeal was not voluntarily, knowingly, and intelligently made and that he or she was denied effective assistance of counsel survive the waiver of the right to appeal inasmuch as the alleged deficiencies impact the plea.").

To survive the waiver, according to the New York courts, the claim of ineffective assistance must directly pertain to the defendant's decision to plead guilty – in other words, the claim must "go to the very heart of the process." People v. Parilla, 8 N.Y.3d 654, 659, 838 N.Y.S.2d 824 (2007) (quoting People v. Hansen, 95 N.Y.2d 227, 230, 715 N.Y.S.2d 369 (2000)). This emphatically does not include missed opportunities to seek dismissal or other errors in pretrial proceedings distinct from the plea negotiation process itself. See id.; People v. Di Raffaele, 55 N.Y.2d 234, 448 N.Y.S.2d 448 (1982) (claims of preindictment prosecutorial misconduct foreclosed by waiver); People v. Friscia, 51 N.Y.2d 845, 433 N.Y.S.2d 754 (1980) (speedy trial claims foreclosed by waiver). These cases express the same concern as has the Second Circuit in this context – if a defendant decides to plead guilty based on erroneous advice on a material point given in the context of his decision to plead guilty, then the resulting plea cannot be truly "knowing and voluntary." See, e.g., People v. Finkelstein, 25 A.D.3d 456, 457, 807 N.Y.S.2d 97 (1st Dep't 2009) ("Although defendant waived his right to appeal, his claim that his attorney rendered ineffective assistance . . . is reviewable to the extent it affects the voluntariness of his plea . . . .").

Perhaps the strongest support for the § 440 court's decision is a case that respondent has not cited here: the New York Court of Appeals' decision in Parilla. There, the defendant had an

ostensible argument that the statute of limitations barred the claim against him. On the eve of

trial, he considered accepting a plea agreement. Through counsel, he inquired of the court

(seeking, in effect, an advisory opinion) as to whether the court would grant a motion to dismiss

based on the statute of limitations. The court obliged, and advised him that such a motion would

be denied because there was a statutory toll. The defendant thereupon accepted the plea offer,

which included an appeal waiver. After sentencing, he challenged his plea in a consolidated

direct appeal and collateral proceeding, arguing that his counsel was ineffective for having failed

to move to dismiss on statute of limitations grounds. The Court of Appeals upheld the appeal

waiver and declined to hear the claim:

> [T]his is not a case where the alleged ineffectiveness of counsel goes to the
> voluntariness of defendant's plea and waiver of appeal. To the contrary, the
> record establishes that defendant's plea was intelligent, voluntary and knowing.
> Before he pleaded guilty, defendant was aware of the potential statute of
> limitations defense and the possible application of the CPL§ 30.10(4)(a)(ii) tolling
> provision. After having an opportunity to weigh his options, defendant chose not
> to assert the defense, declined his right to a jury trial and waived his right to raise
> the limitations argument on appeal.

Parilla, 8 N.Y.3d at 660.

It seems clear that the "connectivity" standard in the Second Circuit's Parisi decision

limits the effectiveness of appeal waivers far more than the New York Court of Appeals' "heart

of the process" standard in Parilla. In Parisi, the appeal waiver was avoidable based on the

failure of trial counsel to seek dismissal on speedy trial grounds; in Parilla, the waiver could not

be avoided by the failure of trial counsel to seek dismissal on statute of limitations grounds. The

cases cannot be reasonably reconciled.

Although both Courts' standards go to the issue of whether a defendant's guilty plea is

knowing and voluntary, which is undoubtedly a question of constitutional magnitude, see

McMahon v. Hodges, 382 F.3d 284, 289-90 (2d Cir. 2004), it is not clear whether the breadth of the Second Circuit's standard is one of constitutional interpretation or resulted solely in the exercise of its supervisory power over federal appeal waivers. It may well be that the New York Court of Appeals' narrower "heart of the process" standard is all that the Constitution requires, and if so, then procedural bars imposed by the New York courts in accordance with Parilla would constitute independent and adequate state law grounds to preclude federal review.

However, I need not resolve that issue because the procedural bar imposed by the § 440 court went beyond the scope of permissible waivers, not only, most certainly, under Parisi, but also under Parilla and all of the other state court authorities cited above. In reaching this conclusion, I recognize that, at first blush, there are some similarities between the instant case and Parilla. In both cases, the defendant and his lawyer identified a legal issue on the eve of trial that weighed upon the defendant's decision whether to plead; discussed it with the court; and decided to forego the legal issue in favor of pleading guilty. Nevertheless, the dissimilarities between the alleged errors of counsel are more important. The error of Parilla's counsel was the failure to assert an affirmative defense to prosecution that was wholly separate from the plea agreement. In this case, however, the alleged error went toward the key provision of how petitioner's term of imprisonment would be calculated; that error was itself the basis for the plea bargain.

As suggested above, I can think of no issue that goes more to "the heart of the process" than whether or not petitioner's prior New Jersey conviction would count in his sentencing. Petitioner's agreed-upon term of imprisonment was directly dependent on the ability, or lack of ability, of his lawyer to understand the application of a foreign conviction under N.Y. Pen. L. § 70.08(1)(a). If, as petitioner alleges (and, as discussed below, the record supports), his attorney

lacked even the most basic knowledge of how to make this analysis, then the guilty plea that petitioner gave was the result of his lawyer's bad advice in the most direct way.

A case cited by respondent in passing, People v. De Aga, 74 A.D.3d 552, 903 N.Y.S.2d 39 (1st Dep't 2010), is a strong indication that the procedural rule invoked by the § 440 court here was not "regularly followed" by New York courts. De Aga involved the issue of whether another section of the same statute at issue here, N.J. Stat. § 2C:12-1, could serve as a predicate felony under N.Y. Pen. L. §70.04(1)(b)(i), and concluded in no uncertain terms that it could not. The Court reached out under its interest-of-justice jurisdiction to vacate the plea, finding the point so compelling that it was unnecessary to consider the defendant's concurrently-pending § 440 proceeding. The Court explained that the legal mistake – construing N.J. Stat. § 2C:12-1 as a qualifying predicate New York felony – was so intertwined with the plea negotiation process as to render the defendant's plea involuntary:

> Misinformation as to defendant's status impacted plea negotiations. The parties were under the misapprehension that defendant was receiving the most lenient disposition permitted by law. Furthermore, whether defendant was a first felony offender or a second violent felony offender made a dramatic difference in the minimum sentence upon a conviction after trial . . . . These misapprehensions may have affected the People's offer, as well as defendant's decision to accept it.

De Aga, 74 A.D.3d at 553. De Aga thus supplies further indication that petitioner's ineffective assistance of counsel claim goes "to the heart of the process."

The § 440 court's application of the waiver as a procedural bar to petitioner's claim was therefore improper under state law. The procedural bar thus cannot be considered "firmly established and regularly followed" by New York courts, see Garcia, 188 F.3d at 77, and is inadequate to preclude petitioner's collateral attack in federal court.

20

# IV

After determining that petitioner's claims were procedurally barred, the § 440 court alternatively denied his claims on the merits. The scope of my review of petitioner's Sixth Amendment claim is therefore limited. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1). The fact that the state court did not fully articulate all possible grounds for rejecting the claim on the merits does not deprive its decision of this deferential standard of review. See Jimenez, 458 F.3d at 143.

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's result]." Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal rule from [the Supreme Court's] cases but

unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. For relief

to be warranted, the "state court's application of governing federal law . . . must be shown to be

not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 555 U.S. 179, 190,

129 S.Ct. 823 (2009) (internal quotation marks omitted).

To prevail on a claim of ineffective assistance of counsel under the Sixth Amendment, a

petitioner must satisfy the two-part inquiry set forth in Strickland. First, he must first show that

his "counsel's representation fell below an objective standard of reasonableness," Strickland,

466 U.S. at 688, and that counsel made errors serious enough to violate defendant's guarantee of

counsel via the Sixth Amendment. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366 (1985).

In evaluating that issue, I must "'indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance.'" United States v. Aguirre, 912 F.2d 555,

560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). Second, petitioner "must show that the

deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. This means "that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. at 694.

In denying petitioner's ineffective assistance claim on the merits, the § 440 court did not

cite Strickland and did not describe either prong of the Strickland analysis. With regard to the

merits of petitioner's entire § 440 application, the court stated:

> [S]uch application has no merit. Prior to entering into a plea, the defendant fully
> discussed his prior New Jersey conviction with his attorney. The defendant also
> reviewed his own research with his lawyer. The prosecution and defense counsel
> agreed that defendant was not a mandatory persistent felony offender but that
> upon pleading guilty, he faced sentencing as a second violent felony offender
> who's [sic] predicate conviction was for a violent felony offense. The defendant
> then entered into a plea of guilty on this instant case. The allegation that his
> attorney was ineffective for permitting him to admit this prior New Jersey felony
> conviction has no legal or factual support whatsoever.

22

Although purporting to reject the Sixth Amendment claim on the merits, the court did not engage in a Strickland analysis. In this paragraph, the court merely recites the facts of petitioner's case and proceeds to summarily reject his Sixth Amendment claim.

When the state courts have "summarily rejected" an ineffective assistance of counsel claim on the merits, a district court considering that claim under AEDPA should "turn directly to the facts of the case to determine whether Strickland was applied unreasonably." Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004). In this situation, a district court's inquiry "must focus on the ultimate decisions of those courts, rather than on the courts' reasoning." Davis v. Greiner, 428 F.3d 81, 88 (2005) (internal quotation marks omitted). To find that the state court's ultimate decision was objectively unreasonable, a court "must find that there was some increment of incorrectness beyond error." Davis, 428 F.3d at 88 (internal quotation marks omitted).

A.

As to Strickland's first factor, even respondent does not dispute that the advice petitioner received here, and the argument that the prosecutor made and the trial court accepted, was wrong. The New Jersey assault statute is not a qualifying felony for second violent felony offender status under New York law. The method for determining when a foreign conviction constitutes a qualifying felony is set forth in N.Y. Pen. L. § 70.04, which basically provides that a foreign conviction will count if it has "the same elements" as a qualifying New York violent felony, all of which are listed in N.Y. Pen. L. § 70.02. New York law generally limits the comparative inquiry to the face of the New York and foreign statutes. See People v. Muniz, 74 N.Y.2d 464, 467-68, 548 N.Y.S.2d 633 (1989).

Under the New Jersey statute and the face of petitioner's New Jersey indictment (which merely repeated the language of the statute), the New Jersey assault does not qualify as a predicate violent felony in New York. The elements of the New Jersey assault statute and New York's assault statute are obviously different, and the New Jersey assault statute criminalizes much less egregious conduct in two respects. First, the New York statute requires use of a deadly weapon, whereas the New Jersey assault statute does not require any weapon. Second, the New Jersey assault statute is violated if a defendant causes a police officer "pain," whereas the New York statute requires that a defendant subject a police offer to injury causing "a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Pen. L. § 10.00(10). Thus, for example, based on the face of the New Jersey assault statute and petitioner's indictment, petitioner could have been convicted in New Jersey for punching a police officer. That, without more, would not rise to the level of New York's aggravated assault statute, and thus the New Jersey conviction was improperly counted as a predicate felony.

Respondent correctly notes that not every mistake made by a lawyer is objectively unreasonable. For example, an attorney's reasoned tactical choice cannot be second-guessed on habeas corpus review even if, with the benefit of hindsight, the choice appears erroneous. See Strickland, 466 U.S. at 690-91. Similarly, when advising a defendant or taking an approach that is a matter of judgment, the fact that the judgment appears later to have been erroneous does not necessarily mean that the attorney was objectively unreasonable. See id.

But according to petitioner's description of the events, which respondent does not dispute, that is not what happened here. Petitioner avers that his discussions with his lawyer

24

showed that the lawyer had no understanding, not only of the elements of the New Jersey assault statute, but of the basic New York principle that the issue in comparing the foreign statute to its New York counterpart is whether the elements of the crime are the same.[6] Instead, petitioner's trial counsel was of the firm view, consistent with the prosecutor's position, that the New Jersey conviction qualified as a predicate felony because both the New York and the New Jersey statutes pertained to an assault on a police officer. There is no support whatsoever for the position under New York law that foreign crimes with similar-sounding names to New York crimes constitute predicate felonies. There is thus no tactical decision here and no judgment call. There is simply a lack of knowledge.

The §440 court was of the view that petitioner's legal sophistication, demonstrated by his having convinced his lawyer, the prosecutor, and the judge that his two New Jersey misdemeanors did not "count," should be considered as part of the ineffective assistance analysis. I disagree. Regardless of a defendant's sophistication, it is objectively unreasonable for a New York defense lawyer to lack knowledge of the basic principles of enhanced sentencing status under New York law when his client is facing enhanced sentencing.

In Mask v. McGinnis, 28 F. Supp. 2d 122 (S.D.N.Y. 1998), for example, the prosecutor and defense counsel had operated under the assumption that the petitioner would be sentenced as a persistent violent felony offender because he had two prior felony convictions. Based on this assumption, the prosecutor refused to make an offer of less than ten years, and the petitioner chose to proceed to trial, where he was convicted and sentenced to at least twenty years in

---

[6] For this reason, cases under 28 U.S.C. § 2255 that decline to find ineffective assistance due to the miscalculation of the federal sentencing guidelines are inapposite. "Because the prediction of a guidelines range is necessarily an estimate of a determination left to the Court's discretion, a mistaken calculation is generally not akin to 'erroneous legal advice about the ultimately knowable.'" United States v. Guidice, No. 02-729, 2004 WL 1152539, *5 (S.D.N.Y. May 21, 2004) (quoting United States v. Sweeney, 878 F.2d 68, 70 (2d Cir. 1989)).

prison. As to one of his prior convictions, however, petitioner had not yet been sentenced and judgment had not yet been entered. Under the plain language of N.Y. Pen. L. § 70.08, this meant that the conviction should not have counted for enhanced sentencing status. On habeas corpus review, then-District Judge Chin found that "[a]s a consequence of defense counsel's failure to detect the prosecutor's error, the prosecution, the defense, and the trial court all operated under the mistaken impression that petitioner had to be sentenced as a violent persistent felony offender," Mask, 28 F. Supp. 2d at 125, and that trial counsel's failure to have basic familiarity with the New York statute was objectively unreasonable. Accord, Somerville v. Conway, 281 F. Supp. 2d 515, 523 (E.D.N.Y. 2003) (Where habeas petitioner was wrongly sentenced in state court as second violent felony offender because of improper counting of foreign conviction, trial counsel's failure to argue the point was objectively unreasonable because "it would not have required exceptional measures for a defense lawyer to become familiar with the pertinent statutes and case law.").

Finally, I note that the presence of a sentencing issue arising from the law of a state other than New York does not make counsel's lack of knowledge of how to analyze that conviction less objectively unreasonable. First, the seminal problem here was trial counsel's unfamiliarity with the principle of New York law on how to treat foreign convictions. Had he known that, he would have required no additional knowledge of New Jersey law beyond the simple language of the assault statute and the one other statutory provision that defined the term "bodily injury" (both of which statutes his client provided him, and are quoted in note 1, supra). Furthermore, criminal defense counsel is expected to be familiar with provisions of law that might go beyond daily trial practice if those provisions have meaningful consequences with regard to his client's guilty plea. See Padilla v. Kentucky, 130 U.S. 1473 (2010).

I therefore hold that the §440 court unreasonably applied <u>Strickland</u> in determining that petitioner's counsel was objectively reasonable.

**B.**

The only potential factual question raised on this record is whether petitioner satisfies <u>Strickland</u>'s second factor, namely, whether he was prejudiced by his counsel's bad advice.

The Supreme Court has explained that, when a petitioner challenges his sentence, <u>Strickland</u> prejudice may be demonstrated upon a showing that the ineffective assistance resulted in a sentencing difference of "any amount of actual jail time." <u>Glover v. United States</u>, 531 U.S. 198, 203, 121 S.Ct. 696 (2001). When a petitioner challenges a sentence imposed after conviction at trial, for example, courts have found <u>Strickland</u> prejudice upon a showing that counsel could have secured a more favorable sentence through effective pre-trial plea bargaining. See <u>Puglisi v. United States</u>, 586 F.3d 209, 215 (2d Cir. 2009) (when a petitioner rejects a plea offer for a sentence lighter than the sentence ultimately received after trial, prejudice is demonstrated by showing that "but for counsel's improper advice, the petitioner would have accepted the plea offer") (citing <u>Aeid v. Bennett</u>, 296 F.3d 58, 62-63 (2d Cir. 2002)); <u>United States v. Gordon</u>, 156 F.3d 376 (2d Cir. 1998) (asking whether there was a "reasonable probability" that, but for the alleged ineffectiveness of counsel, a plea bargain would have been offered to and accepted by petitioner); <u>Dobbin v. Greiner</u>, No. 00-7085, 2007 WL 414986, at *3 (S.D.N.Y. Jan. 31, 2007) (same); <u>Mask</u>, 233 F.3d at 140.

Here, petitioner asserts that he is challenging the sentence based on his counsel's ineffectiveness during the plea bargaining process. It is implicit in petitioner's argument that he is also challenging his counsel's performance during the sentencing, as his counsel could obviously have raised this issue at any point prior to sentencing.

This second Strickland factor is often not free from doubt, as it requires resolution of a hypothetical situation that has not occurred. Here, as is often the case, the hypothetical is at least double-faceted: (1) if petitioner's trial counsel had analyzed and argued to the prosecutor and the trial court that petitioner's New Jersey aggravated assault would not support second violent felony offender status, would the prosecutor have offered eight years; and (2) if the prosecutor had offered eight years, would petitioner have accepted it?

Notwithstanding the deferential standard under 28 U.S.C. § 2254(e)(1), I hold that petitioner has demonstrated by clear and convincing evidence that had his lawyer properly advocated on his behalf, he would have received and accepted an eight year plea agreement and sentence. As to the second issue identified above -- would petitioner have taken an eight year plea agreement -- there can be little if any doubt. Petitioner's position when he pled guilty, during his § 440 proceeding, and in this habeas petition makes it clear that he was going to plead guilty to the best deal he could get. He was aware of the evidence against him and did not want to go to trial.

The first issue is not as clear because there is no evidence in the record from the prosecutor. Nevertheless, the circumstantial evidence strongly suggests the conclusion that, if the prosecutor knew that New York law did not permit petitioner to be sentenced as a second violent felony offender, the prosecutor would have offered him a sentence of eight years. This was not a case where there prosecutor was demanding the high- or even middle-end of the potential sentencing range, nor was it a case where the prosecutor expressed any intransigence about making a plea agreement. He first offered to allow petitioner to plead to a lesser crime, with a twelve-year determinate sentence, when he thought that petitioner's three New Jersey convictions should count as predicate felonies; when he learned that two of the offenses did not

count as predicate felonies, he quickly dropped to ten years, which was the mandatory minimum for a second violent felony offender. It therefore logically follows that, if it had been pointed out to him that the New Jersey aggravated assault conviction could not count either, he would have offered the bottom of the new sentencing range. It would strain credulity to hold, as the § 440 court implicitly did, that a prosecutor who was willing to bargain down to a ten-year term rather easily would insist on trial rather than offer eight years once it was pointed out to him that the basis for the ten-year term was legally erroneous.

I recognize that it is not impossible. The prosecutor could have concluded that ten years was as low as he was willing to go. He might have reasoned, if faced with the illegality of sentencing petitioner as a second violent felony offender, that notwithstanding the inability to count the New Jersey convictions, petitioner's criminal history was sufficiently egregious that he was going to offer no less than ten years. The prosecutor was not obligated to offer a plea agreement at all, much less to offer an agreement at the bottom of the applicable sentencing range.

Respondent asserts that it is mere speculation as to whether an eight-year agreement would have been offered. As noted above, there are sufficient reasons on this record to support a conclusion to the contrary. Moreover, petitioner can hardly be blamed for any deficiency of proof in this regard, given the § 440 court's determination not to hold a hearing and the fact that only respondent has access to the prosecutor. Any uncertainty in the issue beyond these facts is inherent in the context of examining the <u>Strickland</u> prejudice factor.[7] Thus, I conclude that it is

---

[7] To the extent there is any issue as to whether the state court would have accepted an eight-year plea agreement, I find based on its willingness to accept the twelve or ten-year agreement that it would also accepted an eight-year agreement. There is no indication on the record that the trial court would have insisted on the case going to trial if the parties' agreement was for eight years.

far more speculative to believe that the prosecutor would have gone to trial instead of offering an agreement with two years less than he had proposed accepting.

In any event, to demonstrate prejudice, petitioner needs only to demonstrate a "reasonable probability," see Strickland, 466 U.S. at 695, that if his trial counsel had effectively argued the correct standard for evaluating the New Jersey assault conviction, the prosecutor and the trial court would have agreed to a plea agreement for a term of eight years. All of the discussions on the record were directed toward a proposal for a determinate sentence at the low end of petitioner's sentencing status, whatever that was. There is nothing to suggest that the prosecutor would have insisted on a term in excess of petitioner's lowest available sentencing exposure under properly-applied New York law. Petitioner therefore clearly demonstrated to the § 440 court a "reasonable probability" that he was prejudiced by his counsel's ineffective assistance, and the § 440 court unreasonably applied Strickland in holding to the contrary.

In making this finding, I concede that the meaning of "unreasonable" in this context is rather elusive. The Supreme Court has cautioned that "an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." Williams, 529 U.S. at 412. In the Second Circuit, this means that the state court's application of federal law "must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). However, the Second Circuit also maintains that this increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Id. (internal quotation marks omitted). Here, there is no credible evidence that the prosecutor would have demanded a trial over a two-year difference, and all of the facts point to the contrary conclusion.

## V

The writ of habeas corpus is granted to the extent that petitioner's guilty plea is vacated, unless respondent consents to the imposition of an eight-year sentence, together with any other conditions attendant to the sentence previously imposed, within 120 days. See generally United States v. Carmichael, 216 F.3d 224, 227 (2d Cir. 2000).

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
      October 3, 2011